Case number 18-3045. United States of America v. Charles Morgan, Jr. Appellant. Ms. Wright, for the appellant. Mr. Lenners, for the appellate. Good morning, counsel. Ms. Wright, please proceed when you're ready. Thank you. Good morning. May it please the court. Lisa Wright, representing Charles Morgan. I'd like to reserve two minutes for rebuttal. As to whether the government established that the border's ESPA drew on its actual coverage footprints were the product of reliable principles and methods as required by Rule 702, let me try and explain exactly what we're challenging here and why. The expert opinion here placed Morgan definitively within the borders of the actual coverage footprints. The jury was told that the phones, quote, can't be outside of those footprints and talk into them, and also told the phone had to be in those areas and there's no other place in the world that they could have been. And we're challenging the actual drawing of those lines, the borders of the so-called blobs, particularly on pages 443 and 444. Not the part of the process that involves technology and software that's used to gather data or crunch data or plot actual signal measurements. But the final step that ESPA uses when it takes those known signal measurements and uses them to make predictions about what signal exists in places where no measurement was taken. In other words, all the places between the blue lines where Agent Horan drove and those predictions are scientifically educated guesses based on gladiators expert scientists, but they believe the way radio waves can best be modeled in the real world. And in this respect, ESPA is not just a technological tool like a calculator or Excel spreadsheet that's used in the course of forming an opinion, it's, it actually is the expert opinion and requiring the government to satisfy rule 702 with respect to such a predictive model like this is the classic application of Daubert, a classic application. So to be specific on step by step, we're not challenging, for example, the plotting of the wedges on the map. That's the government's 28 J letter involved a case where the defendant was saying, you can't this algorithm that plots these wedges is violates is unreliable. And in that case, those are just, that's just a plotting that can be done manually with a protractor on the data is known, so there is no, just a depiction of known facts, I guess, visually, we're not challenging the gathering of the signal strength data with the driving around to get it. That's actual data we're not challenging you know when agent went back to the office and uploaded you software to upload the data into the program. And we're not challenging the so called bread trail maps, those are the actual again the actual plotting of coordinates of data points he collected. And then, you know, color coding them, and that's real data and it's just a way to present it visually, and anyone could plot that. So what we are challenging. Again, is the predictive algorithm and that takes these scattered known, you know, bread trail dots, and it uses the scientific assumptions correlations which we don't know what they are to transform those scattered data points into solid footprints that we are told the model creators believe represent the quote actual definitive. So, can I ask a question, can I ask a question about this which is the particular images that you're talking about on for 43 and for 44 is, are you challenging the use of that image at all. So it's no matter what that image can't be used or are you challenging it because of the way it was accounted for. Well that the caption calls it an actual coverage area. So I think we are challenging the whole thing, because that's what his testimony was that it's actual borders. Right, so it's the but then that's the caption and which caption are you talking about which page, like for 43 and I believe 44 both use the phrase actual coverage area. I see yeah and the parenthetical it says actual. Right, so it, but that's words that describe what's on the image. So it's, it's not the picture itself it's the way that the picture is the way the jury is led to understand what that picture describes. I mean I felt like the fact that it's described that way, the caption, and that's an expert opinion that that that he is has been has been you know cranked out for him to report to the jury, and he uses those words actual coverage. I do think that's significant. Right now I just want to make sure that I want to isolate what you're exactly talking about is the, not the, not the use of the picture like for example if the picture was there and it had a different caption, then you wouldn't have the same challenge what you're challenging is the fact that it says actual coverage area, so definitive right that the borders are treated as firm actual borders and we don't know exactly whether gladiator even use them that way. So if, if everything had come in. All these images and maps had come in. And the expert had said, this is the technology that we use in the ordinary course in doing our job to try to pinpoint these things. This is the machine we use this is the image we got, and our best judgment, this, this is where we look for the phone. Um, but I can't be 100% certain that the phone is in here it's theoretically possible it couldn't be, would you have any objection to that. Yeah, I would because I guess I have been focusing on the hard edges but the fact is that this predictive model is also filling in all the points to create the solid color. It is predicting, you know, where the color belongs and where there should be a little donut. How prejudicial is this really when you get the victim witness testifying as to both ends of the interstate commerce jurisdictional requirement. And you have other corroboration but she mentioned the side when she came into DC and the correct that corroborates. Is this really all that prejudicial anyway. I think so because I think there were a lot of issues with her credibility and go through them that know this was the element that was really the only element that we could challenge. And there were a lot of reasons to doubt her and she had lied about how she came to be in the car. Her timeline really didn't add up. So in other words, even if you, you know, you believe she ended up at Mr Morgan's house and there was sexual activity there. If there was really doubt about what she was doing and how what her backstory was as far as how she ended up there. And, you know, the phone went dead, two hours before she ended up at her back at her home, the timeline of how she got from her grandmother's house and what you know she claimed to be on a bus that her grandmother said didn't even run that day. So it does appear that she wasn't being truthful about know what, what was going on, but in the hours beforehand. And she, she did ultimately admit that she was going to meet this that she had met this one person earlier Buddha and then she was going to go meet Sean. Yeah, that changed a little bit. And she claims that, oh, I never got with Sean because Mr Morgan, he intercepted me at Randall circle. And, you know, I just think the jury could have a doubt whether what really happened was that she had ended up in Maryland and and came across Mr Morgan there that's very good possibility. I think the government was sufficiently concerned about the credibility on the roof, they bolstered it with improper hearsay at which we noted in the brief. And to me that just shows that they are a little nervous about credibility on that point. And I you know it's really important I think that he, she, apparently, she did not convey to defective Mancuso, it seems on the night of the offense with the time that she's telling the nurse that she was pulled physically pulled by the wrist into the car. Detective Mike who so is under the impression that there isn't a DC offense, so it seems like at that point on the first night, there seems to be this feeling that everything took place in Maryland. But that's pretty significant. And, you know, the timing of the claim it's after he turns the case over to PG county, it's, there seems to be an inference that maybe the significance of the border crossing in clear. Welcome to DC sign, you know, she does live only like probably a mile and a half from there. It's not like it's not a known thing that we all drive by all the time. Also, you know, she presumably drove by it on the way, and he drove her home. So, I guess those are the things I would say about the harm that's on the transport but I also think there's harm on the pornography count. Because, you know, once her credibility is, you know, bolstered by this improper scientific evidence which does have a big impact on the jury I think you can't assume that the jury didn't rely in part on the claim that she told him when she got in the car that she was under 14, there was a lot of reasons to doubt whether she said that one thing is Mr Morgan active like he thought she was of age if he told her she was 14, I don't think he would have been giving her his business card, you know, which led them to the men's area I want to ask you a question about the men's area but I want to make sure that I'm not cutting. Yes, on the men's area issue. I think our timer has stopped. I'm not asking you to stop but usually it starts giving us negative numbers. Oh yeah yeah I think that the times that I've presided it's just given us a zero so we know but that's okay. Yeah, thank you. So on, on the men's area issue. Can I know you start with intent but can I just start you off on knowingly for a second, just ask you a question about knowingly, which is if, and you may resist this but just accept the premise for these purposes. If we think the cases that say in the prostitution context that knowingly doesn't travel down to the age. And I know the rationale of those cases essentially, even if you don't have knowingly affect the age, there's still knowledge of something criminal afoot because the subject matter is prostitution. But if we think those cases were correctly decided, then is there a way under the text of the statute to say, well that knowingly does go to the age when the application is not prostitution, but when it's a not and not every sexual activity but it's a particular sexual activity for which the underlying offenses strict liability. You know that is a tricky situation, but I think I would say yes, because that you can have. It means something different when there's a strict liability situation because of what the court said and Burwell court was very focused on the fact that there was an intent element already, and that the knowingly was just an additional sentence enhancement intent, I mean knowledge element. And when that premise isn't there I mean I know it is unusual to have a word mean two different things. But I think that there needs to be a mens rea there's a very strong presumptions Supreme Court has really made that very very clear and figure Allah and behave and a lot of cases that we assume they, they wanted it here at Congress use two words of mens rea. What's the best, what's the best case for the proposition that the same word and put aside intent for just now, but that the same word like knowingly means two different things depending on the application, because I know I recall it I think it was an immigration statute adopted the least common denominator principle which indicated that when the word means something in one context, it means something in all those contexts, even if there's some differential equities seemingly at stake and I'm just wondering what would be the textual basis for saying that knowingly means something different in a context in which the underlying offenses strict liability than when it's not. I know I can't, I can, you know, try to find something on that, but I guess I would say if they do have to mean the same thing and that is the reason that the other courts are wrong because they weren't thinking about this, they, you know, if they if this particular issue wasn't presented in those cases. I think the only case that I saw that mentions that, like a piggyback defense is like there's some dicta I think in the Tyson Third Circuit case where they sort of, I think they suggest that if they wouldn't have a problem with that I can't remember exactly what they said but it was definitely not a holding. And I mean I think it's important that. Well I guess this goes to the under 16 was. Is there any other questions about the under 18. Yeah, I don't I have a question about the under 16 but I don't I don't have anything I'm through. Yeah. Yeah. Um, I just, you know, I think the under 16 is a very strong argument because you cannot before we before we go to that. Yes. Can I just ask, I actually find your knowing argument. Pretty plausible as an original matter. But what do I do with the fact that we have a lot of Court of Appeals decisions, many of them are after floors Figueroa. And we have part of our reasoning not a major part of our reasoning but part of our reasoning and Burwell was that this the knowing element of this statute doesn't attach to the age requirement is, is this issue, still open to us. I mean I think it is because I think Burwell specifically mentioned prostitution also. And they were for a while was sort of comparing this person to like a drug dealer who utilizes a juvenile. And I mean that's just not the situation. Suppose I think on on judge Srinivasan questions suppose I think that the flexibility to distinguish between strict liability statutory rape crimes and men's Ray of prostitution crimes is potentially available on the intent element but not available on the knowing element knowing is just either you have to know the age or you don't. If, if, if I think that, I guess, I reluctant somewhat reluctantly read Burwell, as I strongly suggestive against this point it's not a holding. So I think the issue is technically open. And I think I tried to go through and address most of the arguments of the other circuits I may not have been. I do think pretty much everything they say is wrong. Just one more question on knowing, before we move on, which is, what about what about ratification, we have a whole series of Court of Appeals decisions over the same course of time where we have a whole series of statutory amendments to 2423. A. Don't we, at some point have to conclude that Congress is okay with the, the Burwell view of knowing. Well, maybe if it was another area of statutory law but I have to say your eyes will just go cross eyed with these all these different sex cases that all are saying same thing in different ways, and I don't think Congress is paying any attention to this, I guess is what I would say. No, but I mean, at least according to reading law that justification for the ratification can and is not that members of Congress are thinking about this it's that the bar would come to view this question is settled. There, just, there is a lot of authority and let's stipulate that it's not hugely persuasive, but there's still a lot of it. What about rehave. I mean rehave was much more extreme example than this, where it was uniform that and Supreme Court didn't hesitate to say well we're actually reading the words, and the words say this. I know that. I think, you know, judge you Val for what it's worth I mean she, I think, but the law was messed up, but she said I don't see a way around Burwell, and I think that she would that there was a way around Burwell, certainly as to the under 16 element, but I don't see a reason why this court can't read the knowingly, as it believes is appropriate. Despite the fact that the court said by the by and Burwell in prostitution cases, you know, look, here's an example of how this works and just, you know, maybe didn't just didn't notice that there is this other circumstance, and wouldn't say that if they had. So on intent. Yes. Isn't the more before we come to which back or whether there is or is not a strong mens rea presumption, start with text isn't. It is the better reading of text in its intent to engage in an act chargeable as a crime. And in that particular formulation. The direct object is not the crime it's the act. So why shouldn't we read that provision to say that You, the, the intent required under the federal statute is to engage in the actus reus of the predicate state crime. So for for statutory rape, it is the intent. The, the actus reus of that crime is the sex it's the intent to engage in the sex. Because I would say that his if your intent is to engage in this in that sex with an older person. Then, which brings us to the need to import mens rea because it's otherwise innocent conduct. Right. I mean, I do think that the word intent can travel down the clause, just as it can in the knowingly. And it's, you know, it's the sexual activity for which you can be charged and you can't be charged if the activity is with a 17 or 16 year old, but I guess that's the argument and that's the logic that Murphy used Where the issue was doing things for the purpose of violating a statute that required you to be under 16, then you had to know you're 16 and I, so I would say here, in order to intend the conduct be chargeable if you're under 16, you have to know they're under 16. And, you know, I've note that Murphy in this case are, you know, they're like kind of sister provisions and same 2423 and doesn't really make sense to have a requirement that when you travel to meet the victim. You have to know the that they're under 16 but when you make arrangements for them to cross the border and come to you that you don't have to know that doesn't make any sense at all. So I think Murphy is a very strong case for us and we And I think Jones is also very important because the court there really broke it down and said that when, when, in that case the language was with the intent to carry on unlawful activity. I don't see much difference between that and engage in activity that's unlawful. It seems the same. And the court said you have to act with the intent that each element be completed and broke it down and said, you know, you have to find out is the activity is exactly the feature that's necessary to make it unlawful so we would say that has to be specifically intended and I think judge you've all really wanted to give that during instruction, and she said she thought it was a very very aggressive use, and she just couldn't find a way. And I think that she was confusing the big treating Burwell as if it was addressing intent as opposed to knowing. And so, let me make sure my colleagues on further questions on the on the intent prong of it, and we'll we do have rebuttal time which will, which will give you. Okay. Thank you. Thank you, Mr. Let's hear from the government Mr letters. Thank you. Excuse me. Thank you, Your Honor. Good morning and may I please the court Dan letters for the United States. I'll pick up where Defense Council left off, you know, the court has pointed out many of the problems with the defenses reading of 2423 a. But one thing that no one has yet touched on is the context in which this statute was enacted. It is protect minors from sex crimes. And historically, in this area of law strict liability has been recognized and approved. So can I just make sure on strict liability then let me just make sure that the, I know that the government's position covers certain circumstances so because this is a statute that prohibits the transportation to begin with. And it even prohibits attempts as under subsection e and also let's put that to one side for the moment actually let's just talk about the transportation part. Then I take it that if there's a trend if the defendant goes and picks up somebody whom he thinks is of age under state law, and goes over the border, and then over the right when he gets over the border he sees. He asks for an ID. And she gives it to him. And he realizes she's underage and he says oh I, I, this is not what I want to be doing I'm going to drive you home. And he takes her back the offense is completed and he's guilty for a 10 year minimum right. I think that's right, Your Honor. Okay, but I don't know how you wouldn't say that I think that has to be your construction I just wanted to make sure there wasn't an interpretation that I was missing. No, I think that's right, Your Honor, and I think that the answer is that that's a possible consequence of Congress incorporating strict liability and an area of law where it's common, and they can rely on that might. That might well be right and it can I just follow up on one more one more hypothetical and just to make sure that I'm understanding the full scope of the government's argument. So then when once you bring in the attempt part of the statute, because subsection he deals with attempt, then even if the offender, if the defendant goes over the border meets the person with an intent to bring them back. And then on seeing them over the border realizes, wait a minute, this is, this is not what I thought I was getting myself into because the text exchange we had before. She swore that she was 25 I'm now on site and I see no way she's 25 I, I don't want to have anything to do with this, and he leaves and goes back over the border. Would he have committed an attempt. I haven't thought through the implications of attempt, you need a substantial step that you know that crossing the border would have to be a substantial step and then you need to have the intent to complete the underlying offense. Look, I suspect that's charged laws attempt, but, you know, I haven't fully thought through the implications. But again, I think, let me get let me give you one more, which is a variation on this theme, which is two people begin an online courtship, and they represent to each other that they are off age. They decide that they would like to get together, and the man in upper northwest orders a taxi cab for the woman in Chevy chase to come to his place in DC. The woman gets in the cab crosses state lines, and she's underage. On your theory that would seem to be a completed offense for the 10 year minimum, even though the offense is completed before the defendant could inspect the victim which is the core rationale for dispensing with mens rea for statutory rape. So, again, your honor, I think that's right. I think I can concede that there are challenging hypotheticals that make it seem as though application of strict liability in this area is unfair. But my response to that is, when you look at congressional intent, and you recognize that they were enacting this legislation that they criminalize the same conduct with no knowledge of age requirement and 2421 a, and that they recognize that strict liability was common in the area of sex offenses against minors, that the troubling hypotheticals don't require this court to read into the intent provision, a knowledge of age requirement that doesn't otherwise exist. There are challenging hypotheticals, but the Supreme Court has repeatedly made clear that in the area of sex offense against minors, the presumption of favor of mens rea doesn't even apply. Because historically, it was, there was no historically states did not apply mens rea to sex crimes against minors. It doesn't apply on the theory that for statutory rape, the defendant, in the nature of the crime that the defendant can examine the victim before the offense is completed. And although there are hypothetical scenarios in which this statute may be violated the typical scenario and the scenario involved in all of the cases, the person transport the victim in person, and has the chance to inspect him or her in person. And so while there are hypotheticals that take this out the course and I think the thing of the thing about at least a couple of hypotheticals I asked is, those are situations in which there's an expect inspection. And then the person decides upon inspection, not to go through with it, and it's still fits within the statute. Yes. But, but that would also be an attempted statutory rape right but under Maryland laws, as I understand it attempted statutory rape doesn't exist. That's true under Maryland law that's not generally true as a legal matter your honor love fave section 11.3 talks about how a defendant may be convicted of attempted statutory rape, notwithstanding lack of knowledge that the intended victim was underage the model of the penal code takes the same approach in section 5.01, and that would be applicable even without inspection. If you have a substantial step that presumably would be true but the core scenario in which this what that Congress was aimed at and surely contemplated and passing a statute was actual actual. Can I just ask you, you mentioned on your list of reasons why your construction is right. That, and I'm not necessarily suggesting it's not I just want to explore the contours of it, at least. But one of the reasons you mentioned was the comparison to 2421 a. Yes. And on the 2421 a though. It also has the same word intent, at least right so would we be in a situation in which if the if Miss rights argument about the way right way to construe intent in 2423 were accepted, then wouldn't that also apply in 2421, and so you wouldn't have a situation in which there'd be disparate results as between 2421 and 2423, there would just be two results that you don't like, or maybe I'm missing. No, no, that's right, Your Honor, I was saying the comparison of the two meaning with regard to the knowledge of under 18, the knowledge part got it. And so if you start there if you start with the analysis of did Congress and hand in 2423 a to have knowledge applied to the victim's age. And if you agree that it doesn't. For the reasons we put that forth in our brief, it would be extraordinarily odd to find that Congress meant to door that are through the intent provision, and also apply it in 2421 a, where there is no stated knowledge of age requirement. It just seems like a perverse result here to find that when Congress was intending to protect minors from sex crimes did not apply a knowledge of age requirement in 2423 a if you accept that part of argument that they somehow backdoor. Through the intent provision. Sorry, what why is it unusual to think that If we're giving we one reason why Congress might have the knowledge requirement. be read to do less rather than more is precisely because there is the second mens rea element, which can at least plausibly be read to pick up this unusual case where the predicate offense is a strict liability offense. I mean, it's a little odd little odd for you to be invoking all of the presumptions for strict liability crimes in a statute that has not one mens rea requirement, but two of them. So I think it would be odd to to conclude that Congress thought the intent provision was doing the work when For all of the reasons why it did not intend knowingly to apply to age 18 it would make it harder for the government to prove These offenses and to protect sex minors from sex crimes as this court found in chin, which wasn't even a sex case. They found it implausible that Congress would have placed on the prosecution, the often impossible burden of proving beyond a reasonable doubt that a defendant knew the youth he enticed with under 18 and that was enticing the youth to commit a drug crime. Here, it seems even more implausible when there is an express knowingly requirement in the statute. That you agree that that knowingly requirement does not apply to age 18 it's even more implausible that Congress wouldn't backboard without using the word knowledge. That requirement through the provision, especially given the legislative history, indicating that Congressman to import State and local community standards. It's not just strict liability crimes where If you agree with the defense's argument that it would raise the mens rea required under state law. It's also the many state laws where recklessness Suffices to establish, for example, a defendant's mental state with regard to whether his victim is too intoxicated to consent. For the defense's argument that those laws would also the defendant would require be required to know that the victim was incapable of consent, not just recklessness. And so if Congress intended to incorporate the state and local standards. It's not just a liability crimes that would be have the bar raised for prosecutions under 2423 Okay. Let me make sure my colleagues don't have additional questions for you, Mr. Lenners. No further All right. Thank you, Mr. Lenners. Miss Miss right we'll give you your two minutes of rebuttal. Okay. I guess I would say on the whole backdooring issue that it's it's a different Knowledge of age. It's different. It's a different age and it's serving different purpose. And I think the government's theory was that the knowledge is, is like almost like just a sentence enhancement and it's not reaching into like that. There's nothing unusual about saying that when you that defendants are presumed to know the facts, not the law, but the facts underlying that makes their crime criminal conduct criminal so I think that's a different and as far as importing the state crime. You know, this is really an attempt. And so it really makes little sense that it doesn't make sense it's going to be have a higher intent element than the substantive crime because you're having to intend that it happened because all you're doing is taking a substantial step with a mental state and as Murphy says it's a, it's a crime of intent, not a crime of action. And therefore it's not surprising that there is more on the issue of hypotheticals and saying that these don't, it's, it's mostly caring people. Well, I mean that may have been true in the old days but I think with the internet and, you know, ubers and all that. I think there's a case that I cite good when I, I don't remember all the details off my head but I do know that the person was in man was in Texas, and the woman, the young girl 17 I think she was, was in like Minnesota, and she, she basically had a lot of travel difficulties and turned around. But, I mean she was coming she was on a bus to Texas, and she was very close to crossing the border. And that that's that happens. So, these are real hypotheticals, and he'd never met her, you know, she told him how old she was, but I think in that case, she had actually been honest about how old she was so he's not, but you can easily see it happening where you did not. I guess my time is up. I would ask for all four counts to be reversed for a new trial. Thank you, counsel. Thank you to both counsel will take this case under submission.
judges: Srinivasan, Katsas, Sentelle